FRED BENIOR, *Administrator of Estate of* JOSEPH BENIOR, *v.* LOUIS PAQUIN.

*Promissory Notes.   Trover.   Evidence.*

The defendant purchased the note in question of his daughter, who told him that B., to whom she was betrothed, and who was a soldier in the army, gave it to her. He had also seen a receipt in her possession, signed by her, stating that she had received the note of B., and was to account for it on demand, and a promise to pay him or bearer. At B.'s death this receipt was found in the hands of S., who was a depositary of B.'s papers. *Held,* that this knowledge of the receipt was not alone sufficient to put the defendant on inquiry in respect to his daughter's title to the note, but he was a *bona fide* holder.

The holder of a note, as security for money lent, is not chargeable with a wrongful conversion of it by refusing to deliver it up, until the person claiming it pays, or offers to pay, the amount for which it is held.

Benior, Adm'r, *v.* Paquin.

The county court having ruled that the title to the note was in B. and his administrator, and the defendant being thereby left to stand exclusively upon his transaction with his daughter, she was a competent witness, not being within either the terms or intent of the statute excluding, as a witness, a living party to a cause of action or contract in issue where the other party is dead.

This was an action of trover to recover as damages the value of a note of one hundred dollars payable to Joseph Benior or bearer, which the plaintiff claims as the property of the estate he represents, and which the defendant has converted to his own use. Plea, the general issue, and trial by jury at the December Term, 1866, STEELE, J., presiding. The note was left by Joseph Benior, the intestate, in the hands of Emily, the daughter of the defendant, and the defendant purchased the note of Emily. The defendant introduced testimony tending to prove that the note was presented as a gift by said Joseph to Emily. But as all the testimony tended to show that the gift was to be revocable if the donor lived to get home from the army, or if the said Emily did not remain faithful to her engagement to marry said Joseph, the court excluded that defence, and submitted but two questions to the jury ; one, whether the said Emily had authority to sell the note, and the other, whether the defendant was an innocent holder of the note by virtue of a *bona fide* purchase for value, of said Emily. The jury found specially for the defendant upon the latter ground, and did not find, upon the question, whether Emily had authority to sell the note. No question was made but that the plaintiff, administrator, demanded the note and the defendant refused to return it, claiming to own it, and to have paid for it its full value. Upon the branch of the case upon which the verdict of the jury was rendered the following facts appeared : The said Emily and the said Joseph were engaged to be married, and the parents of Emily had consented to the betrothal. While they stood in this relation Joseph, in December, 1863, enlisted in a Vermont regiment, in the United States service, and went to the front. He was, at the time of his enlistment, at Danville, Vermont, where Emily lived, and left most of his clothing and property with Emily, except his papers, which he left with one Moses Stevens. This note he left with Emily, and it appeared that he left no other notes, or

business papers with her.   His own parents lived somewhere in Lower Canada.   After Joseph went to the army he and Emily corresponded regularly and frequently, writing each other generally as often as once a week, until he was taken prisoner by the enemy, in May, 1864, after which no tidings came from him.   She sent him articles of clothing, boxes and provisions, and he sent her money; at one time, in March, 1864, the sum of forty dollars.   The defendant's testimony tended to show that Emily claimed to own the note in suit, and informed her father that Joseph had written her to go out west to look up a place for them to live when married.   Other testimony tended to show that they had intended, before Joseph's enlistment, to make their home at the west, and there was testimony tending to show that the said Joseph had written Emily to raise funds to go west and look up a place, and that the defendant was informed of it.   And the defendant, who was a witness on his own behalf, without objection, testified that he supposed the note belonged to Emily, and, also, that he supposed and believed that Emily had a right to dispose of it, and was authorized by Joseph to use his funds to go west and look up a place.

The defendant's testimony also tended to show that when Emily got ready to go West, which was in August, 1864, she told her father that she had been to a Mr. Russelleau, who owed Joseph, to get some money, but could not get it; but that she could get some of Mr. Stanton if he, the defendant, would sign with her.   That he said he would sign if she would secure him.   And that she secured him by turning out this note, and he signed with her a note for forty dollars to Mr. Stanton, which note he had paid.   Joseph died in a rebel prison at Andersonville, August 22d, 1864.   The note to Stanton was given shortly before his death, and the defendant's testimony tended to show that before Emily had completed her western trip, and before the news of Joseph's death had reached the defendant or Emily, she had drawn on her father for funds, against this note in controversy, sufficient to cover this whole note; and this testimony was uncontradicted.   Emily returned to Vermont, but went again to the west in the fall of 1865, and was married to a Mr. Tillotson there, April 13th, 1866, and now lives at the west,

14

The plaintiff's testimony tended to show that this note was not a gift to Emily, and that she had no authority to sell it, and that the defendant was not an innocent purchaser.

The plaintiff introduced in evidence a receipt for the note in question, signed by Emily, with proof that it was sent to the said Mr. Stevens by Emily. The receipt is in the following words:

" Received one note of Joseph Benior, dated December 12th, 1863, for one hundred dollars, payable three years from date, unless sooner called for by Joseph or Frederick Benior, with four per cent interest annually, signed by Frank Blanchard; said note I am to account for on demand; I promise to pay him or bearer.

" EMILY PAQUIN."

The receipt is not dated, but it was made out and signed, and sent Mr. Stevens, about the time that Joseph went away, or shortly after.

The defendant testified, on cross-examination, that he saw the receipt; that when he saw it Emily had both the note and the receipt and showed him both, but that Emily told him Joseph had given her the note. There was no evidence, except circumstances, to show whether or not the defendant was ever aware that Emily sent Mr. Stevens the receipt. The defendant offered the deposition of Emily Tillotson, the signer of the said receipt. The plaintiff objected to the deposition on the ground that said Emily was disqualified, by statute, from being a witness to matters which occurred before the appointment of the administrator. The court overruled this objection,—to which the plaintiff excepted.

The plaintiff also requested the court, first, to rule and instruct the jury that as matter of law upon the conceded facts the defendant had sufficient knowledge of the receipt to put him upon inquiry, and for that reason that he could not hold the note as a *bona fide* purchaser, but must stand no better in relation to the note than Emily herself. The court refused to so rule, but left it for the jury to say whether he had such knowledge upon all the evidence in the case bearing upon that question, and told the jury that if the defendant bought the note in good faith, then they should say whether, as a prudent man, considering not only the evidence as to his knowledge

of the receipt, but also as to the claims and representations of Emily, the holder of the note, and the relation in which Emily stood to the payee of the note, and the purposes for which Emily desired the money, and all the circumstances surrounding the transaction, he had reason to doubt her authority to deal with the note as she did, and if they thought that he had not, but purchased the note, not only in good faith, but also in the exercise of reasonable prudence, then the defendant would recover.   Second, the plaintiff also requested the court to charge the jury that, inasmuch as all the money, except that procured of Stanton, was advanced by the defendant after the death of the intestate, and when the plaintiff demanded the note, the defendant refused to return it, and claimed to own it, and made no offer to deliver it on receiving what he had paid before the intestate's death, the plaintiff was, in any event, entitled to recover what the note (which was confessedly good) was worth, above what was paid on it before the intestate's death.   The court refused to so charge, but told them that the defendant, if he could hold any of the note, could hold it all.   No other question was raised on the branch of the case relating to the right of the defendant to hold the note as a *bona fide* purchaser.   The plaintiff excepted to the refusal of the court to charge as requested, and to the charge given, so far as it differs from the requests.   In other respects the charge was such as the case called for.

*J. Ross*, for the plaintiff.

I.   The court erred in admitting the deposition of Emily Tillotson. Gen. Stats., p. 327, § 24.

II.   The court erred in not instructing the jury that the defendant was put upon inquiry as to the ownership of the note.   He had knowledge of the receipt, and could not in good faith buy the note without making inquiry of the holder of the receipt instead of inquiring of Emily.   Express notice or knowledge of the outstanding receipt is not indispensable.   Story on Promissory Notes, § 197 ; *Cane* v. *Baldwin*, 12 Pick. 545 ; *Hall* v. *Hall*, 8 Conn. 336 ; 3 Kent's Com., § 44, 88 & 80 ; *Gill* v. *Cubit*, 3 Barn & Cress. 466 ; *Power* v. *Balling et al.*, 4 Barn & Cress. 330.

At least the request of the plaintiff, and the evidence, called upon

the court to give the jury instructions as to what is necessary to put one upon inquiry. The court is bound to give instructions to the jury on every question in the case, which the evidence tends to establish. *Campbell* v. *Day*, 16 Vt. 558 ; *Buck et al.* v. *Squires*, 23 Vt. 498 ; *Sherman* v. *Cham. T. Co.*, 31 Vt. 162.

III. In this case the jury failed to find Emily had authority to deal with the note as she did. We insist therefore, that she could not deal with the defendant after Joseph's decease, so as to bind his estate, and that the defendant could not be a *bona fide* holder of the note beyond the sum of $40, for which he signed the note with her to Stanton. It is only where the agent has once had authority to deal with the property, that his dealings therewith after the decease of the principal, and before the knowledge of the principal's decease has reached the agent, or the person with whom the agent is dealing, that the estate is bound by such dealing. The death of the principal operates *per se* as a revocation of the agency as a general rule. 1 Parson's on Con., p. 61. But where there has been no agency, every person deals with the holder of the property at his peril. Chitty on Con., 197 ; Story on Agency, §§ 349, 488, 490, 496 ; 2 Kent's Com. 645 & 646 ; *Blades* v. *Farr*, 9 Barn. & Cress. 167.

*T. Bartlett*, for the defendant, maintained that the defendant was a *bona fide* holder of the note, and cited Chitty on Bills and Notes, 10th American, from the 9th London edition, under head, " who may transfer a bill or note," page 197, and cases there cited ; *Grant* v. *Vaughan*, 3 Burr. 1516 ; *Bolton* v. *Puller*, 1 Bos. & Pull., 539 ; *Ramsbottom* v. *Cati*, 1 Stark. Rep. 228 ; *Collins* v. *Martin*, 1 Bos. & Pull. 648 ; 2 E.p. Rep. 520 ; *Torenttel* v. *Barandon*, 8 Taunt. 100 ; *Bolton* v. *Puller*, 1 Bos. & Pull. 546.

The opinion of the court was delivered by

BARRETT, J. Four questions are raised in this case :

1st. Was it the duty of the court to direct a verdict for the plaintiff on the facts conceded touching the defendant's knowledge as to the receipt which his daughter, Mrs. Tillotson, gave for the note in question ?

The only fact conceded by the defendant bearing on this point is,

" that, when he saw the receipt, Emily had both the note and the receipt, and showed him both, but Emily told him Joseph had given her the note." He did not concede that he was aware, or had reason to suppose, or did suppose, that Emily sent said receipt to Mr. Stevens, Joseph's depositary ; and there was no evidence except circumstances on this subject. Standing upon this state of facts exclusively, it would seem unwarrantable to assume, as matter of law, that the defendant was put on enquiry, so as to be chargeable with bad faith, in taking the note under the circumstances, and upon the transaction disclosed in the bill of exceptions ; and that the most that the court could properly be called on to do, was, to leave to the jury the question of good faith as affected by said receipt, and the defendant's knowledge of it, in connection with the other evidence that bore upon the question. But, if he had put himself on enquiry, prompted by the knowledge he had of the existence of said receipt, what does the case show that he would have found out? Plainly, that the intestate gave Emily the note under the circumstances and terms which the defendant's evidence tended to show. And if it was so given, we think, notwithstanding the ruling of the county court to the contrary, that the title vested in Emily absolutely on the death of the intestate. If so, the plaintiff would not be entitled to raise any question as to good faith on the part of the defendant. Hence, in the judgment of this court, it would have been error if the county court had complied with said request.

The second question may be readily disposed of by recurring to the point as it is presented in the bill of exceptions.

The court, having refused to comply with the request above considered, proceeded to charge the jury on the subject of good faith, which was to be considered by them in view of all the evidence that had a legitimate bearing upon it. Exception is not taken to the matter of this part of the charge, but only, so far as the charge differed from said first request. As we think that that request was not warranted by the law, it follows, of course, that the fact, that the charge differed from it, does not constitute error. It ought to differ from it, or else it would be erroneous. The exceptions, as drawn, preclude the idea of error in what the court told the jury, provided the first request was properly denied.

The third question is made under the second request; and it seems to us that it may be settled on undisputed rules of law. The exceptions do not state that all, or any of the money, except that procured of Stanton, was advanced by the defendant after the death of the intestate; but perhaps this may be inferred, and we so treat it. But this request concedes that the defendant held the note by valid title as security for the money procured of Stanton, and that he so held it at the time the plaintiff demanded it of him; and nothing is shown that he does not still hold it by the same valid title. Wherefore, before the plaintiff could successfully assert a right in himself to withdraw it from the defendant, and disentitle him longer to hold it, it was incumbent on the plaintiff to pay, or offer to pay, to the defendant, the amount for which he was lawfully holding the note as security. Till this had been done, he could properly refuse to deliver up the note upon the plaintiff's demand, and could not be charged with a wrongful conversion for so doing. This touches the right of action, and in this suit is conclusive against the plaintiff.

The fourth question is as to the competency of Mrs. Tillotson as a witness for the defendant. In order to appreciate the question, it is important to note particularly in what relation to the case it arises. By the ruling of the court the defendant was excluded from defence on the score of title in Mrs. T. This ground of defence alone involved any question of contract with the witness to which the plaintiff's intestate was a party. The only defence allowed to the defendant rested on the ground of *good faith* as the holder of the note under a valid contract between himself and the witness. The court assumed that the witness had no title to the note, upon the facts claimed and shown by the defendant, as well as by the plaintiff. That shut out all question of contract to which the intestate was a party, and left the case standing for defence solely on the ground of the contract between the defendant and the witness. Both parties to that contract were living. The cause of action was the conversion of a note, which was the property of the plaintiff's intestate. The plaintiff proved title by showing the existence of the note as a valid one, and Mrs. Tillotson's receipt for it, and his right against the defendant, by showing the note in his hands, and his refusal to deliver it to the plaintiff on proper demand. When the defendant proposed

to show a transaction between the intestate and Mrs. Tillotson by which the intestate had parted with his title to, and property in the note, the court ruled that the title was still in the intestate and his administrator, notwithstanding that transaction. Thus, the defendant was left to stand exclusively upon his transaction with Mrs. Tillotson, who was the bearer of the note, without title to, or property in it. It was this transaction alone that touched the issue either as to *cause of action* or *contract* involved in the trial; and to this, as before said, the intestate was not a party. It, therefore, seems entirely palpable that Mrs. Tillotson does not fall within either the terms or intent of the statute excluding, as a witness, a living party to the cause of action or contract in issue where the other party is dead.

As no error is discoverable upon the points presented by the exceptions, the judgment of the county court is affirmed.